IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAL DEV,

        Plaintiff,                      No. CIV S-11-2950 JAM EFB PS

    vs.

PATRICK R. DONAHOE,

        Defendant.               FINDINGS AND RECOMMENDATIONS

/

       Plaintiff proceeds *pro se* in this action, which was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1). On March 19, 2012, plaintiff filed a "motion for an order deferring further consolidation and adjustment of [mail route] territories until further orders," and noticed the motion for hearing on April 18, 2012. Dckt. No. 17. It appears from the relief sought that plaintiff seeks a preliminary injunction prohibiting the postmaster from adjusting or consolidating any mail routes at the Rocklin Post Office until this action has been resolved. *See generally id.* For the reasons stated herein, the court recommends that the motion be denied.

////

////

////

1

I. Background

Plaintiff, who is employed as a rural carrier at the Rocklin Post Office, alleges in his complaint that he was subjected to discrimination at the Rocklin Post Office and the District Main Office of the Sacramento District on account of his race, color, national origin, and sex. *See generally* Compl., Dckt. No. 1.  Specifically, he alleges that: (1) on June 18, 2010, he was denied High Option on Rural Route 8; (2) on June 18, 2010, he was denied Nullification of Route evaluation for National Count 2010 for Route 8; (3) on June 19, 2010, he was not given additional territory on his route as other carriers; (4) on June 19, 2010, he was not provided with case labels and his Delivery Point Sequence ("DPS") mail was not put in sequence as other carriers; (5) on June 17, 2010, the Postmaster humiliated him and created a hostile work environment; and (6) on January 19, 2011, he was denied a promotion to supervisor level. *Id.*

II. Discussion

Plaintiff now moves for an order prohibiting the Postmaster at the Rocklin Post Office, Cheri Smith, from adjusting or consolidating any mail routes until this action has been resolved. Dckt. No. 17.  According to plaintiff, his complaint alleges and the defendant's answer confirms that in June 2010, Postmaster Smith and Supervisor Annette Crabtree split two vacant mail routes and distributed the territory among several carriers other than plaintiff, and that on another occasion Crabtree, and her daughter Jamie Cain, adjusted routes to add more hours of territory to Crabtree's route.  Dckt. No. 17 at 2, 3.  Plaintiff contends that he was not given the additional territory, even though he met the requirements for receiving such territory, because of his sex, race/color, and national origin. *Id.* at 3.  Plaintiff also contends that it was improper for Crabtree to receive additional territory since Crabtree's daughter Cain played a role in dividing up the territory. *Id.* at 2-3.

Plaintiff also argues that after he filed this action, "until the good portion of February 2012, [the] Postmaster did not intend to adjust routes," but that when plaintiff reported to work on March 15, 2012, after attending a status (pretrial scheduling) conference in this action on

March 14, "[a]ll of a sudden . . . the Supervisor told me that several routes are being adjusted [and] that [plaintiff's] route is one of them." *Id.* at 4. Plaintiff claims that the route adjustment lowers his salary by $5,808.00 while also increasing the salaries of other mail carriers who are less entitled to receive additional territory than plaintiff. *Id.* at 5-6. Plaintiff argues that this recent route adjustment and consolidation was also done by Cain, Crabtree, and Smith, and that the other mail carriers are being given undue territory to prevent them from serving as witnesses in this action. *Id.* at 4, 7.

Defendant opposes the motion, arguing that plaintiff is asking the court to intervene in a new dispute that he has with the Rocklin Postmaster's apparent effort to adjust several postal routes, including plaintiff's, even though that dispute "was not the subject of the EEO complaint that gave rise to this action and is not the subject of [plaintiff's] Complaint." Dckt. No. 18 at 1. Defendant argues that "[i]f [plaintiff] believes that the Postmaster's recent effort to adjust routes violates Title VII, his remedy is to file a grievance or a new EEO complaint, exhaust his administrative remedies, and file a new action in federal court if he is not satisfied with the result reached in administrative process," but "[h]e should not be permitted to skip over the administrative process entirely and demand that the Court intervene in an ongoing personnel dispute that is not even the subject of his Complaint." *Id.* at 2 (citing *Sataki v. Broadcasting Bd. of Governors*, 733 F. Supp. 2d 22, 42-43 (D.D.C. 2010) ("Plaintiff is asking this Court to intervene in an ongoing personnel dispute and direct the outcome of that dispute by imposing Plaintiff's preferred resolution on the agency – all before the dispute has been conclusively resolved and long before it is ripe for judicial review.")).

Defendant argues that while the Ninth Circuit permits district courts to grant preliminary injunctions in limited Title VII cases before the completion of the administrative process if such injunctions are necessary to preserve the status quo, this is not such a case because plaintiff "has not alleged that he has filed an EEO complaint regarding the recent route adjustments, and a preliminary injunction is not necessary to preserve the status quo of the claims that he did

3

exhaust and which are the subject of this action." Dckt. No. 18 at 2 (quoting *Duke v. Langdon*, 695 F.2d 1136, 1137 (9th Cir. 1983)). According to defendant, plaintiff "has not articulated either probable success on the merits and irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in his favor." Dckt. No. 18 at 2. Defendant argues that although plaintiff contends that his salary will be lowered as a result of his route adjustment, he has not shown "that the Postmaster is adjusting routes in a discriminatory fashion and he does not explain why allowing the adjustment of his route will result in irreparable harm or why the balance of hardships tips sharply in his favor." *Id.* at 3. Finally, defendant contends that "any suggestion that the route adjustments are somehow related to the fact that [plaintiff] attended a status conference with the Court on March 14, 2012 . . . should be rejected because [plaintiff] had already included in the parties' Joint Status Report (filed on February 29, 2012) a statement that 'Plaintiff anticipates filing a motion for an order deferring future consolidation of routes and assignment of territory until further orders.'" *Id.*

A preliminary injunction will not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action. *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). A preliminary injunction represents the exercise of a far reaching power not to be indulged except in a case clearly warranting it. *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964). In order to be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit has also held that the "sliding scale" approach it applies to preliminary injunctions—that is, balancing the elements of the preliminary injunction test, so that a stronger showing of one element may offset a weaker showing of another—survives *Winter* and continues to be valid. *Alliance for Wild Rockies v.*

4

1  *Cottrell*, 622 F.3d 1045, 1050 (9th Cir. 2010).  "In other words, 'serious questions going to the
2  merits,' and a hardship balance that tips sharply toward the plaintiff can support the issuance of
3  an injunction, assuming the other two elements of the *Winter* test are also met.'"  *Id.*

4  As defendant notes, the recent route adjustment that sparked plaintiff's current motion
5  was not the subject of the EEO complaint that gave rise to this action and is not the subject of
6  plaintiff's complaint.  Nor has plaintiff completed the administrative process of challenging the
7  recent route adjustment.[1]  Nonetheless, as defendant acknowledges, within the Ninth Circuit, "in
8  a 'limited class of cases' a district court has jurisdiction to grant a preliminary injunction in a
9  Title VII case before the completion of the administrative process in order to maintain the status
10 quo."  *Duke*, 695 F.2d at 1137 (quoting *Berg v. Richmond Unified Sch. Dist.*, 528 F.2d 1208,
11 1211 (9th Cir. 1975), *vacated and remanded on the merits per curiam*, 434 U.S. 158 (1977)).  In
12 those cases, "[t]he usual tests for a preliminary injunction apply . . . ."  *Duke*, 695 F.2d at 1137
13 (quoting *Anderson v. United States*, 612 F.2d 1112, 1116 (9th Cir. 1980)).

14 Here, plaintiff fails to meet the requirements for a preliminary injunction prohibiting the
15 Rocklin Postmaster from making any route adjustments.  Plaintiff has not sufficiently
16 demonstrated at this juncture that he is likely to succeed in his claims that the original and/or
17 recent route adjustments are discriminatory or that the recent route adjustments were retaliatory.
18 Plaintiff also fails to show that he is likely to suffer irreparable harm in the absence of
19 preliminary relief.  While plaintiff contends that his salary will be lowered as a result of the
20 recent route adjustment, the loss of salary does not amount to irreparable harm.  *See Sampson v.*
21 *Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensation or other corrective
22 relief will be available at a later date, in the ordinary course of litigation, weighs heavily against
23 a claim of irreparable harm."); *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football*
24 *League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (purely monetary damages are not normally

---

[1] Plaintiff indicates in his reply brief that he has "filed for EEO Pre-Complaint Counseling," and the complaint has been assigned to an EEO Specialist.  Dckt. No. 19 at 9.

5

1 considered irreparable). Additionally, although plaintiff appears to allege that the route
2 adjustments are being made to silence potential witnesses who would testify on plaintiff's behalf,
3 plaintiff has provided no evidence indicating that is the case; instead, the harm is purely
4 speculative.[2] Under *Winter*, a preliminary injunction may not be granted based only on the
5 possibility of irreparable harm. The Supreme Court instructed that such a result would be
6 inconsistent with the court's characterization of injunctive relief as an extraordinary remedy only
7 to be awarded upon a clear showing that the plaintiff is entitled to such relief. 555 U.S. at 22.
8 To meet the irreparable harm requirement, plaintiff must do more than simply allege harm; he
9 must demonstrate it. *Carribean Marine Servs. Co., Inc., v. Baldridge*, 844 F.2d 668, 674 (9th
10 Cir. 1988). Mere "[s]peculative injury does not constitute irreparable injury to warrant granting
11 a preliminary injunction." *Id.* Here, plaintiff has an adequate remedy at law; namely, a Title VII
12 action challenging the recent alleged route adjustments or any future route adjustments that
13 impact plaintiff. In any such action(s), plaintiff would have an opportunity to have his claims
14 about the discriminatory nature of the route adjustments adjudicated on the merits and if he were
15 to prevail he would be awarded whatever back pay he is entitled to receive.

16 Plaintiff also has not shown that the balance of equities tips in his favor or that the
17 injunction he seeks is in the public interest. Moreover, the injunction plaintiff seeks is overly
18 broad in that plaintiff seeks to prohibit the Rocklin Postmaster from making *any* route
19 adjustments while this action is pending, and plaintiff has not shown why such an injunction is
20 necessary. Therefore, because plaintiff has not demonstrated that he is entitled to the
21 extraordinary remedy of a preliminary injunction, the court recommends that his motion for an
22 order deferring routes adjustment be denied.
23 ////

---

[2] Although plaintiff appears to be implying that the recent route adjustment resulted from plaintiff's attendance at the March 14 status conference in this action, as defendant points out, plaintiff indicated in the February 29 joint status report that he anticipated filing the present motion. *See* Dckt. No. 14 at 3.

III.     Conclusion

Accordingly, it is HEREBY RECOMMENDED that plaintiff's motion for an order deferring routes adjustment, Dckt. No. 17, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  April 17, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE